UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BILLY SANDERS,<br><br>   Plaintiff,<br><br>v.<br><br>SODEXO, INC., a Maryland Corporation, SODEXO AGENCY, SODEXO SERVICES, SDH SERVICES WEST, LLC, SODEXO MANAGEMENT COMPANY and related entities, and WILLIAM KADING,<br><br>   Defendants. | Case No.: 2:15-cv-00371-JAD-GWF<br><br>**Order Granting in Part Defendants' Motion for Partial Dismissal**<br>**[Doc. 25]** |

    Billy Sanders sues his former employer SDH Services West, LLC and related entities after he was fired from his food-service job at Desert Springs Hospital. Although SDH contends Sanders was discharged for shoving and cursing at a vendor's employee in violation of its corporate policy,[1] Sanders—a 44-year-old black man—claims the decision was race- and age-based and made in retaliation for his taking medical leave for an on-the-job injury.[2]

    The defendants move to dismiss Sanders's age-discrimination claim because he failed to administratively exhaust it and his wrongful-termination claim because he has other more specific statutory remedies available. To the extent Sanders intended to plead a Fourteenth Amendment violation theory or a civil-rights claim under § 1983, they also ask to dismiss these claims because there is no state actor here. Finally, in a footnote, defendants suggest that the only proper defendant is SDH.

    I dismiss Sanders's age-based claims because they were not part of his administrative claim, and I dismiss his wrongful-termination claim because he has adequate remedies under the Family and Medical Leave Act (FMLA). I do not find that Sanders has pled a civil-rights violation, so I do

---

[1] Doc. 25 at 3.

[2] Doc. 18.

not reach the question of whether he did so adequately. Finally, I disregard the defendants' argument that any remaining claims against Sodexo, Inc., Sodexo Agency, and Sodexo Management, Inc. (the Sodexo defendants) should be dismissed; the footnoted argument is too inadequately developed for serious consideration.[3]

## Discussion

**A.  Sanders's age-based discrimination claim is dismissed because he failed to exhaust the administrative-claim process for this theory.**

Sanders's first claim for relief alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967, which makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual [who is at least 40 years of age] . . . because of [the] individual's age."[4] Sanders claims that he was terminated "because of his age," which he alleges to be "in excess of 44."[5] The defendants move to dismiss this age-discrimination claim because it was not included in Sanders's Equal Employment Opportunity Commission (EEOC) complaint (he only made a racial-discrimination charge in his administrative filing).[6] Sanders argues that his failure to exhaust the age-based discrimination claim before the EEOC is just a procedural technicality that should be overlooked.

A plaintiff must exhaust his administrative remedies with the EEOC before pursuing an employment-discrimination claim in federal court.[7] "Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion

---

[3] After reviewing the parties' papers, I find this matter appropriate for disposition without oral argument and vacate the August 3, 2015, hearing previously scheduled on this motion. Doc. 37; see also L.R. 78-2.

[4] 29 U.S.C. § 623(a), 631(a); Doc. 18 at 6 (Second Amended Complaint).

[5] Id. at ¶¶ 22, 56.

[6] Docs. 25 at 5, 25-1.

[7] 29 U.S.C. § 626(d).

requirement is a jurisdictional pre-requisite."[8] All of the specific claims made in district court ordinarily must be first presented to the EEOC, so "the jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation."[9] Generally, this means that every theory must be specifically raised before the EEOC. But the court also has jurisdiction over missed claims that are "like or reasonably related to" the charges presented to the EEOC or that fall "within the scope of an EEOC investigation that reasonably could [have been] expected to grow out of the allegations" made to the EEOC.[10] The charges must be construed with the "utmost liberality" in the plaintiff's favor.[11]

Sanders's EEOC charge, construed with the utmost liberality in his favor, does not encompass his age-based discrimination claim. On his EEOC form, Sanders offered this conclusory explanation of the "particulars" of his claim:

> On or about April 11, 2003, I was hired by the Respondent as a Food Service Worker. My last job title was Food Service Worker. On or about December 5, 2013, I was discharged. Other similarly situated co-workers (i.e., and [sic–blanks not filled in] not of my protected class, were not discharged for same or similar violations. Respondent's reason for the discharged [sic] was due to an alleged violation of professionalism. I believe I was discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.[12]

The form contains a section in which Sanders was asked to check the box corresponding to the type of discrimination his claim is based on. He checked only the "RACE" box, leaving the "AGE" box blank.[13] Sanders's complaint affords no greater insight into the basis for his belief that his termination was racially motivated. He states baldly that he "had observed and believes that SoDexo

---

[8] *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003).

[9] *Leong*, 347 F.3d at 1122 (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994); *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990)).

[10] *Id.* (internal quotation marks omitted) (citing *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)).

[11] *Sosa*, 920 F.2d at 1458 (internal quotation marks omitted).

[12] Doc. 25-1 at 2.

[13] *Id.*

has displayed a preference for Caucasian employees," that he is a "black male," and that "SoDexo discriminated against [him] because of race . . . by terminating [him] in part because of his race."[14]

Sanders's age-discrimination allegations are distinct from his race-based ones. He alleges that he "had observed and believes that older workers are routinely replaced with younger workers at SoDexo," that he "is a member of a protected class of employees over 40 years old," that "SoDexo discriminated against Sanders, by and through the acts of Kading, Nomeli and Antonio because of age" and "terminated [him] because of his age," and finally that he "believes" his job was "reassigned to one or more substantially younger person [sic] of equal or lesser experience and qualification."[15]

I cannot conclude that Sanders's age-based claim is like or reasonably related to his EEOC charge or within the scope of the investigation that reasonably could have been expected to grow out of the EEOC investigation of his race-based allegations. The two claims involve markedly different kinds of allegedly improper conduct, policies, practices, and motivations; one does not beget the other. Likely, the EEOC investigation would have been different with the addition of the age allegation because the EEOC would have examined the ages of the employees and investigated past employees' ages at the time of termination—information that would not have been gathered during an investigation of Sanders's racial-discrimination charge.[16] To find Sanders's age-based claim exhausted by his thinly pled race-based discrimination charge to the EEOC would effectively ignore the exhaustion requirement altogether.[17] Because Sanders failed to administratively exhaust his age-discrimination claim with the EEOC, his first claim for relief is dismissed.[18]

---

[14] Doc. 18 at ¶¶ 48, 66–67.

[15] *Id.* at ¶¶ 46, 47, 55–58.

[16] *Id.* at 6.

[17] *Id.*

[18] Sanders also argues that amendments to EEOC charges to cure technical omissions may relate back to the original filing. Doc. 32 at 3–4. Because Sanders has not identified any amendment he filed to his EEOC charge, this argument has no relevance here.

**B.     Sanders's wrongful-termination claim is dismissed because he failed to plead a plausible public-policy-violation theory and he has an adequate alternative remedy under the FMLA.**

In his third cause of action, Sanders alleges a wrongful-termination claim under Nevada state law, theorizing that his termination —after 10 years of service, an on-the-job injury, surgery, and a "brief medical leave"—violates "Nevada Public Policy."[19]  Sodexo offers two reasons to dismiss this claim: (1) this is not one of the "rare and exceptional cases where the employer's conduct violates strong and compelling public policy"[20] such that he can avoid Nevada's at-will employment doctrine that typically bars wrongful-termination claims, and (2) no wrongful-termination claim lies when alternate statutory remedies exist.[21]  Either argument provides a valid reason to dismiss Sanders's wrongful-termination claim.

   *1.     Sanders has not pled facts to permit tort recovery for the termination of his at-will employment.*

Nevada employees are presumed to be at will, and an employer can discharge an employee with or without cause, provided the dismissal does not offend Nevada's public policy.[22]  An employer commits a wrongful termination (primarily known in Nevada jurisprudence as tortious discharge) "by terminating an employee for reasons [that] violate public policy."[23]  For example, public policy may be violated, and the state may permit a wrongful-termination claim when an employee is discharged for activities like: (1) refusing to violate the law,[24] (2) performing jury duty,[25] (3) filing a workers' compensation claim or seeking industrial insurance,[26] (4) refusing to work in

---

[19] Doc. 18 at 7.

[20] Doc. 25 at 8; *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989).

[21] Doc. 25 at 10–11.

[22] *State v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 42 P.3d 233, 240 (Nev. 2002).

[23] *D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev. 1991).

[24] *D'Angelo*, 819 P.2d at 212.

[25] *Id.*

[26] *Id.*

unreasonable and dangerous conditions,[27] and (5) whistle blowing.[28]

This case does not fall into any of these recognized public-policy exceptions. Sanders's claim is based on the theory that terminating a 10-year employee who suffered an on-the-job injury and took time off for surgery violates Nevada public policy "in the minds of many fact-finders,"[29] but he does not identify what public policy that is. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[30] This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[31] The court is also "not bound to accept as true a legal conclusion couched as a factual allegation."[32] Sanders's allegations lack facts that rise to the level of egregiousness necessary to state a wrongful-termination claim in Nevada: he has not even identified the public policy that his discharge violated. Accordingly, Sanders has not stated a plausible wrongful-termination claim, and the claim must be dismissed.

> **2.    Sanders's wrongful-termination claim is barred because he has an adequate statutory remedy.**

Even if I were to find that Sanders could identify a public policy for this claim, it must still be dismissed because Sanders had alternative, comprehensive statutory remedies for these allegations under the FMLA. As the Nevada Supreme Court explained in *D'Angelo v. Gardner*, a wrongful termination claim is a public-policy-liability tort designed to fill the gap when no statutory remedy has been provided.[33] Nevada law bars a claim for wrongful termination "when a plaintiff has an adequate, comprehensive, statutory remedy," even if he failed to avail himself of it, "as it would be

---

[27] *Sands Regent*, 777 P.2d at 900.

[28] *Allum v. Valley Bank of Nevada*, 970 P.2d 1062, 1066 (1998).

[29] Doc. 32 at 4.

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[31] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[32] *Id.* (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).

[33] *D'Angelo*, 819 P.2d at 218.

unfair to a defendant to allow additional tort remedies under such circumstances."[34]

Sanders had a statutory vehicle for his wrongful-termination allegations: an FMLA claim. The FMLA prohibits an employer from interfering with, restraining, or denying an employee's exercise of rights conferred by the Act.[35] An employee may file a claim for a violation of this provision.[36] Sanders suggests that any conclusion that his claim would be covered by the FMLA is premature because discovery has not yet revealed how his employer "documented [his] injury, his leave, or his return."[37] But Sanders's wrongful termination claim is not based on the manner an act was documented; it is based on his allegation that he was fired because he exercised his rights under the FMLA. Sanders recounts that his termination was consistent with his employer's "practice of discouraging employees from exercising their rights, such as making claims for worker's compensation and taking a necessary medical leave under the Family Medical Leave Act" and that he "has observed and believes" he was fired because his employer "could not fully discourage him from taking a necessary medical leave under the Family Medical Leave Act."[38] These allegations fall squarely within the FMLA and are redundant of his fifth claim for relief.[39] Because Sanders had an alternative statutory remedy to vindicate this alleged FMLA violation, I dismiss his wrongful-termination claim.

---

[34] *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009) (citing *D'Angelo*, 819 P.2d at 217–18 and dismissing wrongful discharge claim because plaintiff had—but failed to avail himself of—a claim under the federal Railway Labor Act).

[35] 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(c).

[36] 29 C.F.R. § 825.220(b) ("Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.").

[37] Doc. 32 at 5.

[38] Doc. 18 at ¶¶ 49–50.

[39] Defendants do not challenge Sanders's fifth claim for relief alleging retaliation under the FMLA. *See id.* at 8.

**C.     Miscellany**

Defendants also move to dismiss Sanders's claim under 42 U.S.C.§ 1981 to the extent it is based on age discrimination or a violation of the Fourteenth Amendment because § 1981 only governs race-based claims.[40] They also ask to dismiss any claim under 42 U.S.C. § 1983 and the Fourteenth Amendment because there is no state action in this case.[41] Sanders ignores these arguments in his response.[42] Sanders's silence in response to these arguments may be deemed a concession to their merit.[43] Giving Sanders the benefit of the doubt, however, I perceive the allegations of age discrimination and Fourteenth Amendment violations in his § 1981 claim—and his references to § 1983 throughout the complaint—as stray allegations not intended to state plausible claims for relief (likely the vestiges of a complaint from another case, used as the template to draft this one).[44] Sanders's failure to refute defendants' request to dismiss these allegations supports this conclusion.

But the proper remedy for these vestigial allegations is not dismissal; it's an order striking them under FRCP 12(f), which permits a court to strike immaterial matter from pleadings.[45] Accordingly, I exercise my authority under FRCP 12(f)(1) and strike from the Second Amended Complaint (Doc. 18) all references to § 1983 and the Fourteenth Amendment, and the entirety of paragraph 86. These allegations are immaterial to Sanders's claims.

Finally, I address the defendants' suggestion in footnote two of their motion that SDH is

---

[40] Doc. 25 at 12–13.

[41] *Id*. at 14.

[42] Doc. 32.

[43] L.R. 7-2(d).

[44] My musings on the likely origin of these errors should not be interpreted as me condoning them. Lawyers are expected to personally and carefully proofread their filings before uploading them to the court's filing system.

[45] Fed. R. Civ. P. 12(f).

"[t]he only appropriate [d]efendant in this case."[46] Defendants do not move to dismiss any claims against the Sodexo defendants; they just state that they are not properly named.

As Bryan Garner warns in *The Redbook: A Manual on Legal Style*, "Many courts will disregard arguments raised exclusively in footnotes."[47] "The very fact that the material is footnoted rather than in the body of the writing signals that the content is not of central importance."[48] By relegating this *we're-not-proper-defendants* point to a four-sentence footnote, defendants telegraph that they do not see it as central to their argument. To the extent any defendant intended to request that claims against it be dismissed because it is an improper target of Sanders's claims, I disregard that request because it has not been fairly raised or adequately developed. Defendants are cautioned that this court will continue to ignore substantive arguments raised in footnotes.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for partial dismissal **[Doc. 25] is GRANTED in part. Plaintiff's first claim for relief (age discrimination) and third claim for relief (wrongful termination) are dismissed. The entirety of paragraph 86, and all references to § 1983 and the Fourteenth Amendment are stricken.** The motion is DENIED in all other respects. **The August 3, 2015, hearing in this case is VACATED.**

DATED: July 20, 2015

_____
Jennifer A. Dorsey
United States District Judge

---

[46] Doc. 25 at 3, n.3.

[47] Bryan Garner, The Redbook: A Manual on Legal Style 168 (3d ed. 2013).

[48] *Id.*